Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ENRIQUEZ RODRÍGUEZ NARVÁEZ Y OTROS<br><br>Demandantes-Apelantes<br><br>Vs.<br><br>JAMES CARTER GAUDINO Y OTROS<br><br>Demandados-Apelados | KLAN202500224 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Guayana<br><br>Caso Núm. GM2019CV00248<br><br>Sala: 301<br><br>Sobre: COBRO DE DINERO, EJECUCIÓN DE HIPOTECA |

Panel integrado por su presidente, el Juez Rodríguez Flores, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.[1]

Cruz Hiraldo, Juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de julio de 2025.

Comparece el Sr. Enriquez Rodríguez Narváez mediante *Apelación* y nos solicita que dejemos sin efecto la *Sentencia Parcial* emitida el 21 de enero de 2025, notificada el 22, por el Tribunal de Primera Instancia, Sala Superior de Guayama.[2] En esta, declaró Ha Lugar la sentencia sumaria parcial promovida por el señor Rodríguez Narváez y otros. En consecuencia, declaró nulo el préstamo hipotecario otorgado entre las partes mediante la Escritura de Constitución de Hipoteca Núm. 3 en garantía al pagaré y ordenó la continuación de los procedimientos para dilucidar las controversias restantes. Asimismo, dispuso que quedaba por dirimirse la controversia referente al cobro de dinero conforme a lo establecido por el Código Civil de 1930 y que, por tanto, procede la celebración de un Juicio.

---

[1] Mediante la OATA-2025-070 del 9 de mayo de 2025, se designó al Hon. Fernando L. Rodríguez Flores para entender y votar en el caso de epígrafe en sustitución del Hon. Abelardo Bermúdez Torres.
[2] Apéndice XLVI del Recurso, a la págs. 309-318; Entrada 164 SUMAC.

Número Identificador

SEN2025 _____

Por los fundamentos que exponemos a continuación, se **confirma** el dictamen apelado.

-I-

El 8 de abril de 2019 el Sr. Enriquez Rodríguez Narváez, la Sra. Myrna Iris Rivera Ortiz y la Sociedad de Gananciales compuesta por estos (en adelante, partes Apelantes) presentaron una *Demanda* en contra del Sr. James Carter Gaudino, Fulana de tal y la Sociedad de bienes gananciales compuesta por estos, el Sr. Joseph Raymond Narváez Bermúdez, la Sra. Wanda Yvelize Ortega Nieves, el Sr. Joseph Raymond Narváez Bermúdez, la sociedad de bienes gananciales compuesta por estos, el Sr. John Doe y la Sra. Jane Doe (en adelante, partes Apeladas).[3] En síntesis, alegaron que el 15 de abril de 2013 mediante Escritura de Hipoteca en Garantía de Pagaré, Núm. 3 otorgada ante el Notario Arnaldo Sánchez Recio, el Sr. James Carter Gaudino (en adelante, señor Carter Gaudino y/o deudor) suscribió un pagaré por la suma de $100,000.00, con intereses al 5%, pagadero por semestres vencidos y un crédito por $10,000.00 para en caso de reclamación judicial, garantizado el pago sobre una Finca Agrícola ubicada en Guayama, Puerto Rico.

Asimismo, sostuvieron que para evidenciar la deuda y con el fin de garantizar el pago mediante la constitución de hipoteca, el deudor otorgó y entregó a la parte Apelante un pagaré con vencimiento a la presentación, por la suma de $100,000.00. De otro lado, señalaron que el deudor estableció, en la escritura de constitución de dicha hipoteca, que la propiedad tendría un valor mínimo de $270,000.00 en caso de subasta. Por su parte, arguyeron que el 16 de abril de 2013, el Sr. Joseph Raymond Narváez Bermúdez (en adelante, señor Narváez Bermúdez), otorgó la

---

[3] Apéndice V del Recurso, a las págs. 25-29; Entrada 1 SUMAC. Es menester destacar que, al día de hoy, los demandados identificados como Fulana de tal, Jane Roe y Joe Roe no han comparecido al pleito.

Escritura Núm. 4 de compraventa, en la que compró al señor Carter Gaudino el 50% de la propiedad antes mencionada, por la suma de $100,000.00.

A su vez, sostuvieron que, tanto el señor Carter Gaudino como el señor Narváez Bermúdez, son los dueños y tenedores de buena fe del pagaré descrito y que este se encuentra vencido, es líquido y exigible. No obstante, señalaron que los deudores solidarios no han pagado la deuda, a pesar de las diligencias de cobro realizadas. Finalmente, insistieron en que, hasta el 15 de abril de 2019, los intereses acumulados o por acumularse y no pagados ascienden a $30,000.00. Por tanto, solicitaron al TPI que declarara Ha Lugar la *Demanda* y, en consecuencia, condenara a pagar, solidariamente a los deudores la suma de $100,000.00, intereses acumulados hasta el 15 de abril de 2019 y una suma de $10,000.00 para cubrir las costas, gastos y honorarios.

El 19 de agosto de 2019, las partes Apeladas presentaron su *Contestación a Demanda.*[4] Solicitaron que se declarara No Ha Lugar la *Demanda* y que se declaren nulas las Escrituras y pagarés debido a que solo procede el pago del balance del principal. En el mismo día, la parte Apelante presentó una *Moción de Anotación de Rebeldía.*[5] El 20 de agosto de 2019, el Foro primario mediante *Orden* informó que se les anotó rebeldía a las partes Apeladas, señaló la conferencia inicial del caso para el 24 de septiembre de 2019 y ordenó a estos a mostrar causa por la cual debe levantarse la rebeldía anotada.[6]

El 19 de abril de 2020, las partes Apeladas presentaron *Solicitud de Orden.*[7] Solicitaron que se ordenara al Banco Popular de Puerto Rico (en adelante, BPPR) a entregar copia de todos los

---

[4] Apéndice IX del Recurso, a las págs. 38-41; Entrada 15 SUMAC.
[5] Entrada 14 SUMAC.
[6] *Íd.*, Entrada 16.
[7] Apéndice XII del Recurso, a la pág. 50; Entrada 24 SUMAC.

documentos relativos al certificado de depósito 00004995962-01090000003 que evidencien el mismo y su eventual cancelación y razón de la misma. Además, requirieron que se ordene a BPPR la entrega de todos los documentos de los préstamos comerciales 101-900- 26197 y 101-900-2619377- 9001.

Luego de varios incidentes procesales innecesarios pormenorizar, el 4 de enero de 2021, las partes Apeladas presentaron *Moción de Sentencia Sumaria Parcial*.[8] Argumentaron que la Escritura Núm. 3 del 15 de abril de 2013 es nula por existir causa ilícita al otorgarse sin autorización en Ley para otorgar préstamo hipotecario sobre sumas ascendientes en exceso de lo permitido y en contravención a los Artículos 3 y 4 de la Ley Núm. 214 del 14 de octubre de 1995. Por todo lo anterior, solicitaron al Tribunal que emitiera sentencia parcial declarando la nulidad de la Escritura antes mencionada. Asimismo, identificaron los siguientes asuntos en controversia:

> 1. Al no tener los demandantes al momento de otorgar la Escritura Hipotecaria número 3 de 15 de abril de 2015, licencia expedida por el Comisionado de Instituciones Financieras para otorgar préstamo[s] hipotecarios, si dicha escritura tiene causa ilícita y en consecuencia es nula.
>
> 2. Nulidad o validez de la Escritura Hipotecaria Número 3 del 15 de abril de 2013, y en consecuencia su pagaré.[9]

De otra parte, identificaron que los siguientes hechos no se encuentran en controversia:

> 1. El codemandado Jame Carter Gaudino suscribió la Escritura Número 3 del 15 de abril de 2013, sobre Constitución de Hipoteca en Garantía de Pagaré, ante el Notario Arnaldo Sánchez Recio. (Aneo I, Escritura 3, fue también acompañado con la Demanda,)
>
> 2. El codemandado Jame Carter Gaudino suscribió un Pagaré por el valor de $100,000.00 ante el Notario Arnaldo Sánchez Recio. (Contestación a Demanda, dicho pagaré se acompañó o transcribió en la demanda)

---

[8] Apéndice XXXI del Recurso, págs. 179-211; Entrada 135 SUMAC. Incluyeron los siguientes anejos: (i) Escritura de Hipoteca Núm. 3 de 15 de abril de 2013; (ii) Escritura de Compraventa 4 otorgada el 16 de abril de 2013; (iii) Varias páginas de la deposición al señor Rodríguez Narváez; (iv) Declaración jurada del señor Carter Gaudino.
[9] *Íd.*, pág. 181.

3. Mediante Escritura Número 4 del 16 de abril de 2013, suscrita ante el Notario Arnaldo Sánchez Recio, el codemandado Joseph R. Narváez Bermúdez casado con Wanda Y. Ortega Nieves compró al codemandado James Carter Gaudino el 50% de la finca de 29.1536 cuerdas del Barrio Algarrobo, del Municipio de Guayama. (Anejo II)

4. La parte demandante no tenía ni tiene licencia del Comisionado de Instituciones Financieras para dar préstamos o hacer préstamos hipotecarios. Este hecho dejó de estar en controversia durante el descubrimiento de prueba al aceptar el demandante a preguntas del suscribiente, que no posee dicha licencia. (Anejo III, Parte pertinente de la transcripción deposición de Enrique Rodríguez Narváez, acepta que no tiene esa licencia, Informe de Conferencia, pág. 13, Estipulación 4).[10]

El 5 de abril de 2024, las partes Apelantes presentaron su *Contestación a la Moción de Sentencia Sumaria*.[11] Solicitaron que se declarara No Ha Lugar la *Moción de Sentencia Sumaria* por estar basada en una premisa equivocada de haber otorgado un préstamo. A su vez, requirieron que se mantuviera el señalamiento de juicio y que condenaran a las partes Apeladas al pago de honorarios de abogados por temeridad. El 7 de abril de 2024, las partes Apeladas presentaron una *Réplica a la Contestación de la Moción de Sentencia Sumaria*, acreditando que la *Contestación* presentada no cumple con los requisitos de forma del mecanismo de sentencia sumaria.[12] Además, solicitaron que se declarara Ha Lugar la *Moción de Sentencia Sumaria Parcial*. En respuesta, el 8 de abril de 2024, el TPI mediante *Orden*, otorgó a las partes Apelantes un término de veinte (20) días para que expusieran su posición sobre la *Réplica* presentada.[13] De igual forma, dejó sin efecto los señalamientos de Juicio. En el mismo día, las partes Apelantes mediante *Moción a Tenor con Orden* solicitaron al Foro primario retirar la *Contestación a la Moción de Sentencia Sumaria*.[14]

---

[10] Apéndice XXXI del Recurso, pág. 182; Entrada 135 SUMAC.
[11] *Íd.*, Apéndice XXXII, págs. 212-214; Entrada 136 SUMAC. Incluyeron como Anejo la carta de BPPR acreditando la cancelación del préstamo comercial 101-900-2619377-9001 por una cantidad de $106,215.13 a nombre del señor Carter Gaudino con $102,986.39. Es apreciación de este Foro que la Moción en Oposición a la Sentencia Sumaria no cumple con los requisitos de forma.
[12] *Íd.*, Apéndice XXXIII, págs. 215-217; Entrada 137 SUMAC.
[13] *Íd.*, Apéndice XXXIV, pág. 218; Entrada 138 SUMAC
[14] *Íd.*, Apéndice XXXVI, pág. 220; Entrada 141 SUMAC

Así las cosas, el 23 de abril de 2024, las partes Apelantes presentaron su *Contestación a Moción de Sentencia Sumaria Parcial y Solicitud de Sentencia Sumaria a favor de la parte Demandante.*[15] Dispusieron que, ante lo discutido por las partes Apeladas, es obligatorio concluir que no existe controversia ni de hechos ni de derecho que impidan al Tribunal dictar sentencia sumaria a favor de estos. Por tanto, solicitaron que se declarara No Ha Lugar la *Moción de Sentencia Sumaria Parcial* presentada por las partes Apeladas y Ha Lugar la *Sentencia Sumaria* presentada por estos.

El 17 de mayo de 2025, las partes Apeladas presentaron su *Réplica a Segunda a Nueva Contestación Solicitud de Sentencia Sumaria Parcial y Contestación a Sentencia Sumaria.*[16] Señalaron que las partes Apelantes no cumplieron con exponer las alegaciones de las partes y que no cumplieron con las exigencias de la Regla para contestar moción de sentencia sumaria. Por lo que, solicitaron al Foro *a quo* que se declarara Ha Lugar la *Moción de Sentencia Sumaria.*

Atendida la moción, el 21 de enero de 2025, notificada el 22, el Tribunal de Primera Instancia dictó *Sentencia Parcial.*[17] Dispuso que los siguientes hechos no se encuentran en controversia:

1. El codemandado James Carter Gaudino suscribió la Escritura Número 3 del 15 de abril de 2013, sobre Constitución de Hipoteca en Garantía de Pagaré, ante el Notario Arnaldo Sánchez Recio.

2. El codemandado James Carter Gaudino suscribió un Pagaré por el valor de $100,000.00 ante el Notario Arnaldo Sánchez Recio.

3. Mediante Escritura Número 4 del 16 de abril de 2013, suscrita ante el Notario Arnaldo Sánchez Recio, los codemandados Joseph R. Narváez Bermúdez casado con Wanda Y. Ortega Nieves compró al codemandado James Carter Gaudino el 50% de la finca de 29.1536 cuerdas del Barrio Algarrobo, del Municipio de Guayama.

---

[15] Apéndice XXXVII del Recurso, págs. 212-214; Entrada 144 SUMAC.
[16] *Íd.*, Apéndice XXXVIII, págs. 221-222; Entrada 163 SUMAC.
[17] *Íd.*, Apéndice XLVI, págs. 309-318; Entrada 163 SUMAC.

4. La parte demandante no tenía ni tiene licencia del Comisionado de Instituciones Financieras para dar préstamos o hacer préstamos hipotecarios.[18]

Por otra parte, el Foro primario esbozó los siguientes hechos controvertidos:

1. Si el codemandado James Carter Gaudino recibió los $100,000.00 del préstamo comercial.

2. Cuál fue el destino de los $100,000.00.

3. Si la parte demandada le adeuda algún dinero a la parte demandante.[19]

De igual forma, determinó que el contrato o escritura de préstamo hipotecario y pagaré que quieren hacer válidos las partes Apelantes, son nulos porque no tiene causa lícita, toda vez que no tiene licencia del Comisionado de Instituciones Financieras para otorgar préstamos o dedicarse a dicho negocio y que, por tal razón, la Escritura Núm. 3 del 15 de abril de 2013 es nula. Además, señaló que las partes Apelantes no cumplieron con los requisitos de forma establecidos en la Regla 36.3 (b) de Procedimiento Civil en su oposición.

No obstante, el TPI dispuso que lo anterior no exime a las partes Apelantes de pagar lo debido y que, por tanto, se debe dirimir ante el Foro si en efecto se prestó una cantidad de dinero de la cual se beneficiaron las partes Apeladas. Asimismo, aclaró que de ser así se debe determinar la cantidad de dinero objeto de prestación y las partes Apeladas deben devolver dicha cantidad. De esta forma, concluyó que queda vigente el proceso de cobro de dinero conforme a lo establecido por el Código Civil de 1930.

Insatisfechos, el 28 de enero de 2025 las partes Apelantes presentaron una *Moción de Reconsideración*.[20] Solicitaron que, de entenderlo necesario, se señale una vista evidenciaria para que las

---

[18] Apéndice XLVI del Recurso, págs. 309-318; Entrada 163 SUMAC.
[19] *Íd.*,
[20] *Íd.*, Apéndice XLVII, págs. 319-325; Entrada 165 SUMAC.

partes Apeladas aporten prueba demostrativa de que las partes Apelantes son un prestamista sujeto a las disposiciones de la Ley 214-1995. En atención a ello, el Foro *a quo* mediante *Resolución Interlocutoria* declaró No Ha Lugar la *Moción de Reconsideración*.[21]

Inconforme aún, el 15 de abril de 2025, las partes Apelantes acuden ante nos mediante *Apelación*. Esbozaron los siguientes señalamientos de error:

> Primero: Erró el Tribunal de Primera Instancia al declarar con lugar una petición de sentencia sumaria parcial concluyendo que el apelante no tenía licencia del comisionado de instituciones financieras para otorgar préstamos hipotecarios, determinación que es contraria a derecho y violenta el debido procedimiento de ley negándole al apelante un día en corte para probar su alegación.

> Segundo: Erró el TPI al concluir que el apelante no cumplió con las disposiciones de la regla 36.1 y por tanto declaró con lugar la petición de sentencia sumaria.

A tales efectos, el 19 de marzo de 2025 mediante *Resolución* concedimos a las partes Apeladas hasta el 15 de abril de 2025 para presentar su alegato. En el mismo día, las partes Apeladas presentaron una *Solicitud de Desestimación por Falta de Jurisdicción* y su *Contestación a la Apelación*. El 21 de abril de 2025 las partes Apelantes presentaron una *Moción a Solicitud de Desestimación por Falta de Jurisdicción y Acompañando documentos*. En consecuencia, el 24 de abril de 2025, mediante *Resolución*, declaramos No Ha Lugar la *Moción de Desestimación* presentada por las partes Apeladas.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

-**II**-

-**A**-

Es norma reiterada que la sentencia sumaria es un mecanismo procesal que tiene como propósito la solución, justa, rápida y económica de los litigios civiles que no contengan

---

[21] Apéndice XLVIII del Recurso, pág. 326; Entrada 167 SUMAC.

controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de un juicio en su fondo. *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 979 (2022). La Regla 36.1 de Procedimiento Civil establece que las partes podrán presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada. 32 LPRA Ap. V, R. 36.1.

Por otra parte, la Regla 36.3 de Procedimiento Civil, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3 (2009). *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018). Por otra parte, el inciso (b) de citada Regla regula lo que debe contener la oposición a la sentencia sumaria. En lo pertinente, este escrito debe cumplir con lo siguiente:

> (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior;
>
> (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los

hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable. 32 LPRA Ap. V, R. 36.4.

Así, pues, la parte que solicita la sentencia sumaria tiene la responsabilidad de demostrar de manera clara que el promovido no puede prevalecer mediante ningún supuesto de hechos y que el tribunal cuenta con la verdad sobre todos los hechos necesarios para resolver la controversia ante su consideración. *Íd.* pág. 473.

De igual forma, el Tribunal tiene discreción para conceder o no la sentencia sumaria, ya que el mal uso de esta puede despojar a un litigante de su día en corte, lo cual coartaría su debido proceso de ley. *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 617 (1990). Es por lo anterior, que no es aconsejable que se utilice el mecanismo de sentencia sumaria cuando hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia que deban ser evaluados por el juzgador. *Cruz Cruz v. Casa Bella Corp.*, 213 DPR, 993 (2024); *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 980. No obstante, el Tribunal puede utilizar el mecanismo de sentencia sumaria, aun cuando hay elementos subjetivos, si la evidencia que será considerada en la solicitud surge que no existe controversia en cuanto a los hechos materiales. *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 442-443.

Ahora bien, antes de utilizar el mecanismo de sentencia sumaria, el Tribunal:

> (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Management Administration Services, Corp. V. ELA*, 152 DPR 599, 611 (2000).

En síntesis, el Tribunal de Primera Instancia no podrá dictar sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre hecho material y esencial, o (4) como cuestión de derecho no proceda". *Fernández Martínez v. RAD-MAN San Juan III-D, LLC.*, 208 DPR 310, 335 (2021).

Asimismo, Nuestro Más Alto Foro ha expuesto que la parte que se opone viene obligada a **contestar de forma detallada y específica** aquellos hechos pertinentes para demostrar que existe una controversia real y sustancial que debe dilucidarse en juicio. *Ramos Pérez v. Univisión de Puerto Rico*, 178 DPR 200, 215 (2010) (énfasis nuestro).

Conforme ha resuelto el Tribunal Supremo, la parte demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a demostrar que [tiene] prueba para sustanciar sus alegaciones". *Flores v. Municipio de Caguas*, 114 DPR 521, 525 (1983). *Ramos Pérez v. Univisión, supra*, págs. 215-216. Así, pues, las meras afirmaciones no bastan y no debe cruzarse de brazos. *Íd.*; *Ramos Pérez v. Univisión de Puerto Rico*, 178 DPR 200, 214-215 (2010). "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en

controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión, supra*, 215.

No obstante, el solo hecho de no presentar evidencia que controvierta la presentada por el promovente, no implica necesariamente que procede la sentencia sumaria. *PFZ Props, Inc v. Gen, Acc Ins. Co., supra*, pág. 913. De manera que, los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria, sino que tienen el deber de considerar todos los documentos en autos, incluso aquella que no haya formado parte de la solicitud, sin dirimir cuestiones de credibilidad. *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004).

En cuanto al estándar de revisión aplicable al Tribunal de Apelaciones al momento de revisar la determinación del foro primario de conceder o denegar la sentencia sumaria, el foro intermedio apelativo solo puede:

> (1) considerar los documentos que se presentaron ante el foro primario —cual implica que, en apelación los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el foro primario, ni esbozar nuevas teorías—, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta. *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 981.

Por utilizar los mismos criterios de evaluación, los foros apelativos se encuentran en la misma posición que el tribunal de instancia. *Meléndez González et al. V. M. Cuebas*, 193 DPR 100, 116 (2015). Ahora bien, el Tribunal Supremo de Puerto Rico estableció que el estándar a seguir para revisar la denegatoria o concesión de una moción de sentencia sumaria es el siguiente:

> (1) que el Tribunal de Apelaciones se encuentre en la misma posición del Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria, y que esta revisión sea *de novo*;
>
> (2) que el Tribunal de Apelaciones revise que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en las Reglas de Procedimiento Civil;

(3) que el Tribunal de Apelaciones revise si en realidad existen hechos materiales en controversia y si existen debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y

(4) si los hechos materiales realmente son incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho en la controversia. *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 982. (Énfasis suplido).

El Tribunal Supremo de Puerto Rico ha reiterado que "[t]oda vez que la moción de sentencia sumaria evita la celebración de un juicio, las deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiese, presentados por las partes en apoyo de su contención, deben admitirse en evidencia en un juicio plenario". *Carpets & Rugs v. Tropical Reps*, 175 DPR 615,637 (2009); *Jusino et als. V. Walgreens*, 155 DPR 560, 577 (2001). (Énfasis suplido).

### -B-

La Ley Núm. 214 de 14 de octubre de 1995, conocida como la Ley para Reglamentar el Negocio de Intermediación Financiera, tiene como propósito "reglamentar el negocio de "intermediación financiera" como corredor de préstamos hipotecarios sobre bienes inmuebles, prestamista, agente, planificador, consultor o asesor financiero y corredor o intermediario de otros préstamos y financiamientos y para establecer penalidades". En su exposición de motivos dispone expresamente que:

[D]ebido al auge de estos negocios y por estar este sector de la industria revestido de un alto interés público, económico y social, la responsabilidad de reglamentarlo, supervisarlo y fiscalizarlo no debe limitarse a las instituciones, entidades y personas que cumplen con los requisitos impuestos por ley y están debidamente autorizadas a dedicarse a algún tipo de negocio financiero reglamentado.

Es por tanto necesario y conveniente extender esta reglamentación, supervisión, fiscalización a las instituciones, entidades y personas que, abierta o solapadamente, realizan negocios de "intermediación financiera" como prestamistas, agentes, planificadores, consultores o asesores financieros, corredores o intermediarios de otros tipos de préstamos y financiamientos, **sin estar debidamente autorizados a tales fines por ley o reglamento.** 7 LPRA § 1071 (Énfasis nuestro).

De igual forma, el Art. 2 de referida Ley define un prestamista como "cualquier persona que se dedique al negocio de conceder préstamos de toda naturaleza no cubiertos por las leyes especiales y los reglamentos promulgados al amparo de las mismas". 7 LPRA § 1071. Además, define préstamos como "la entrega o adelanto de dinero de curso legal en Puerto Rico con la obligación expresa por parte de quien lo recibe de devolver otro tanto a quien se le entrega, con o sin el pago de intereses". *Íd.*

En cuanto a la obtención de licencias, el Art. 4 de la Ley 214-1995, dispone que:

> Ninguna persona, excepto las excluidas de la aplicabilidad de esta ley, los bancos autorizados a operar en Puerto Rico, compañías de fideicomisos, agencias federales o dependencias del Gobierno de Puerto Rico, cooperativas de ahorro y crédito, sistemas de retiro gubernamentales, asociaciones de ahorros y préstamos federales, compañías de seguros autorizadas a hacer negocios en Puerto Rico y personas naturales que concedan préstamos o financiamientos con un volumen combinado de negocios anual que no exceda de diez mil dólares ($10,000.00), podrá dedicarse al Negocio de Intermediación Financiera sin antes obtener una licencia expedida por el Comisionado, conforme a lo dispuesto en esta ley. 7 LPRA § 1073.

Asimismo, las partes que estarán excluidas de la obtención de licencia según dispuesto anteriormente serán:

> [L]as personas que actúe en su capacidad de dueño, socio, director, oficial, agente o empleado de cualquier negocio autorizado por ley tales como: bancos, asociaciones y bancos de ahorro y préstamos, compañías de financiamiento, financieras, instituciones hipotecarias y otras similares cuya actividad principal sea el conceder préstamos o financiamientos, con licencia para ello.

> Tampoco aplicará a aquella persona que como dueño, socio, director, oficial, agente o empleado se dedique a cualquier negocio en que la obtención de préstamos o financiamientos para los clientes de dicho negocio sea inherente, incidental o necesario al mismo, tales como los negocios de venta o arrendamiento de bienes y servicios, a los agentes, corredores-traficantes, consultores o asesores de inversiones y valores cubiertos por la Ley Núm. 60 de 18 de junio de 1963, según enmendada, y la Ley Núm. 6 de 19 de octubre de 1954, según enmendada, conocidas respectivamente como "Ley Uniforme de Valores de Puerto Rico" y "Ley de Compañías de Inversiones de Puerto Rico" [Nota: Sustituida por la Ley 93-2013, "Ley de Compañías de Inversión de Puerto Rico de 2013"] ni a un abogado, contable, economista, ingeniero o maestro cuya prestación de estos servicios sea meramente incidental al ejercicio de su profesión.

Sociedad de Educación y Rehabilitación de Puerto Rico (SER de Puerto Rico) y el Fideicomiso de Vivienda y Desarrollo Humano de Puerto Rico, según el mismo ha sido creado y es operado bajo la Escritura Núm. 135 de 7 de mayo de 2004, otorgada ante el Notario José Orlando Mercado Gely, están exentos de la aplicación de esta ley. 7 LPRA § 1072.

### -C-

En nuestra jurisdicción rige el principio de la autonomía contractual o *pacta sunt servanda. Cruz Cruz y otra v. Casa Bella Corp. y otros,* 213 DPR 980, 995 (2024). Las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y al orden público. *Íd.*; Art. 1207 del Código Civil 1930; 31 LPRA sec. 3372.[22] De manera que, los contratos en Puerto Rico se perfeccionan por el mero consentimiento, y desde ese momento, las partes se obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil 2020; 31 LPRA sec. 3375.

Como se sabe, las partes contratantes quedan obligadas a las condiciones y a los términos pactados cuando concurren los elementos de consentimiento, objeto y causa. *Engineering Services v. AEE,* 209 DPR 1012, 1027 (2022). Al respecto, el objeto del contrato ha de ser una cosa determinada, mientras que, la causa corresponde a "la prestación o promesa de una cosa o servicio". *Rosario Rosado v. Pagán Santiago,* 196 DPR 180, 189 (2016).

Por otra parte, en los contratos onerosos se entiende por causa, "para cada parte contratante, la prestación o promesa de una cosa o servicio por la otra parte; en los remuneratorios, el servicio o beneficio que se remunera, y en los de pura beneficencia, la mera liberalidad del bienhechor". 31 LPRA sec. 3431. Así, pues, el Código

---

[22] Precisa señalar que a la presente causa de acción le es de aplicabilidad el Código Civil 1930, hoy derogado.

Civil 1930 dispone que "[l]os contratos sin causa, o con causa ilícita, no producen efecto alguno. Es ilícita la causa cuando se opone a las leyes o a la moral". *Íd.*, sec. 3432. Nuestro Más Alto Foro ha enfatizado que "la expresión de una causa falsa en los contratos dará lugar a la nulidad, si no se probase que estaban fundados en otra verdadera y lícita". *Reyes v. Jusino Díaz*, 116 DPR 275, 282 (1985). "Ello, como consecuencia, entrelaza el contrato simulado con expresión de causa falsa con la causa ilícita, toda vez que la ocultación de la que deriva la simulación no puede responder en su contenido intrínseco a un propósito de violar o burlar la ley [...]". *Íd.* De esta forma, cuando la causa del contrato simulado es ilícita, éste es inexistente y no produce efectos jurídicos. *Íd.*, pág. 283. Así, pues, probada la simulación, el contrato simulado queda eliminado, para dar vigencia y efecto al verdadero y disimulado. *Íd.*, pág. 284.

Finalmente, en lo pertinente a la presente controversia, el Art. 1631 regula el contrato de préstamo. Expone:

> Por el contrato de préstamo, una de las partes entrega a la otra, o alguna cosa no fungible para que use de ella por cierto tiempo y se la devuelva, en cuyo caso se llama comodato, o dinero u otra cosa fungible, con condición de volver otro tanto de la misma especie y calidad, en cuyo caso conserva simplemente el nombre de préstamo. [. . .] El simple préstamo puede ser gratuito o con pacto de pagar interés. 31 LPRA sec. 4511.

**-III-**

En el recurso ante nuestra consideración, la parte Apelante argumenta que incidió el foro primario al determinar que este en su oposición no cumplió con las disposiciones de la Regla 36.1 de Procedimiento Civil. Además, que erró el TPI al declarar con lugar la moción de sentencia sumaria promovida por la parte Apelada y, en consecuencia, al determinar que este no tenía licencia del comisionado de instituciones financieras para otorgar préstamos hipotecarios. Se discutirán los errores señalados en conjunto por estar estrictamente relacionados.

Sabido es que, la revisión por este tribunal intermedio de la determinación de un foro primario, en cuanto a una moción de sentencia sumaria y su correspondiente oposición, acontece *de novo*. Siendo así, como cuestión de umbral, revisamos si la moción de sentencia sumaria, así como el escrito en oposición cumplen con los requisitos de forma que dispone la Regla 36.3 (a) y (b) de las Reglas de Procedimiento Civil.

En lo específico, la Regla 63.3 de Procedimiento Civil establece que una moción de sentencia sumaria deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3 (2009). *Rodríguez García v. UCA, supra*, pág. 940. Por otra parte, citada regla establece que una moción en oposición debe contener:

(1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior;

(2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de

cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable. 32 LPRA Ap. V, R. 36.4.

Luego de evaluado el expediente ante nuestra consideración, concluimos que la parte Apelada cumplió cabalmente con los requisitos de forma en su moción en solicitud de sentencia sumaria.[23] Sin embargo, justipreciamos que la primera y segunda moción en oposición y en solicitud de sentencia sumaria presentadas por la parte Apelante no cumplen con los requisitos de la referida regla 63.3.[24] Esto, debido a que la parte Apelante se limitó únicamente a esbozar y discutir el marco procesal y los asuntos litigiosos en controversia. Por tanto, al la parte Apelante no esbozar la causa de acción por la cual solicita la sentencia sumaria y al no incluir los párrafos enumerados de hechos incontrovertidos, no puso en posición a este tribunal para determinar que cumplió con los requisitos de forma de la Regla 63.3 (b) de Procedimiento Civil. Por ello, coincidimos con el Foro primario en que la parte Apelante no cumplió con los requisitos de forma de la Regla 36 de Procedimiento Civil.

Por otro lado, según surge del expediente, en este caso las partes no disputan la existencia de hechos esenciales en controversia. Asimismo, ambas partes, conforme a sus petitorios, estuvieron de acuerdo en que no existían hechos que impidieran que el TPI dirimiera el asunto por la vía sumaria. No obstante, lo anterior, colegimos que la parte Apelante no controvirtió los hechos incontrovertidos presentados por la parte Apelada. La parte Apelada en su petitorio acompañó las respuestas de una deposición administrada al señor Rodríguez Narváez en la que este admite que

---

[23] Apéndice del Recurso, Anejo XXXI, págs. 179-211; Entrada 135 SUMAC.
[24] *Íd.*, Anejo XXXIX, págs. 236-260; Entrada 144 SUMAC.

no posee licencia para otorgar préstamos.[25] Sin embargo, a pesar de la admisión de no poseer la licencia, los documentos acompañados por la parte Apelante en su oposición no controvirtieron que este requería de una licencia para otorgar préstamos, sino que se limitaron a probar que existía un préstamo a favor de la parte Apelada y nada se dispuso sobre la naturaleza del préstamo otorgado.

Reiteramos que nuestro Más Alto Foro ha dispuesto que si la otra parte desea derrotar una moción de sentencia sumaria, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. *PFZ Props, Inc v. Gen, Acc Ins. Co.*, 136 DPR 881, 912-913 (1994). Igualmente, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a demostrar que [tiene] prueba para sustanciar sus alegaciones". *Flores v. Municipio de Caguas, supra*, pág. 525. *Ramos Pérez v. Univisión, supra*, págs. 215-216. Así, pues, las meras afirmaciones no bastan y no debe cruzarse de brazos. *Íd.*; *Ramos Pérez v. Univisión de Puerto Rico, supra*, págs. 214-215. Nuestro Tribunal Supremo ha reiterado que, si la parte opositora se cruza de brazos, se corre el riesgo de que se acoja la solicitud de sentencia sumaria y se resuelva en su contra. *Íd.*, pág. 215.

Evaluados los petitorios, concluimos que la parte Apelante no logró derrotar la moción de sentencia sumaria promovida por la parte Apelada. Asimismo, enfatizamos que, nuestro Más Alto Foro ha expuesto que el Tribunal **tiene discreción para conceder o no la sentencia sumaria**, ya que el mal uso de esta puede despojar a un litigante de su día en corte, lo cual coartaría su debido proceso de ley. *Roig Com. Bank v. Rosario Cirino, supra*, pág. 617.

---

[25] *Véase* Anejo III de la Entrada 135 SUMAC.

De otra parte, en atención a los argumentos sobre la licencia, reiteramos que la Ley Núm. 214 de 14 de octubre de 1995, conocida como la Ley para Reglamentar el Negocio de Intermediación Financiera, tiene como propósito "reglamentar el negocio de "intermediación financiera" como corredor de préstamos hipotecarios sobre bienes inmuebles, prestamista, agente, planificador, consultor o asesor financiero y corredor o intermediario de otros préstamos y financiamientos y para establecer penalidades". Asimismo, referida Ley en su Art. 2, define un prestamista como "cualquier persona que se dedique al negocio de conceder préstamos de toda naturaleza no cubiertos por las leyes especiales y los reglamentos promulgados al amparo de las mismas". 7 LPRA § 1071.

Es apreciación de este foro que la parte Apelante actuó como prestamista y ofreció a la parte Apelada un préstamo de $100,000.00, con intereses anuales de 10% mediante pagaré hipotecario.[26] Además, se desprende del expediente que en garantía del antedicho pagaré, se constituyó una hipoteca mediante la Escritura 3 del 15 de abril de 2013 ante el notario Arnaldo Sánchez Recio.[27] A su vez, en la deposición llevada a cabo, la parte Apelante admite que ha prestado dinero anteriormente.[28] Por ende, colegimos que la parte Apelante cumple con los requisitos para considerarse prestamista según lo dispuesto anteriormente. A tales efectos, es menester destacar que antedicha Ley dispone que:

> Ninguna persona, excepto las excluidas de la aplicabilidad de esta ley, los bancos autorizados a operar en Puerto Rico, compañías de fideicomisos, agencias federales o dependencias del Gobierno de Puerto Rico, cooperativas de ahorro y crédito, sistemas de retiro gubernamentales, asociaciones de ahorros y préstamos federales, compañías de seguros autorizadas a hacer negocios en Puerto Rico y personas naturales que concedan préstamos o financiamientos con un volumen combinado de negocios anual que no exceda de diez mil dólares ($10,000.00), podrá

[26] Apéndice del Recurso, Anejo III, pág. 9.
[27] *Íd.*, Anejo I, págs. 1-18.
[28] Véase Anejo 3, Entrada 135 SUMAC.

dedicarse al Negocio de Intermediación Financiera **sin antes obtener una licencia expedida por el Comisionado, conforme a lo dispuesto en esta ley.** 7 LPRA § 1073 (Énfasis nuestro).

Luego de una evaluación minuciosa del expediente, justipreciamos que la parte Apelante no es considerada una excepción a la norma y, por tanto, estaba impedido de otorgar un préstamo que excede de la cantidad de $10,000.00 dólares, sin poseer la licencia para ello. Además, precisa señalar que precitada Ley define préstamos como "la entrega o adelanto de dinero de curso legal en Puerto Rico con la obligación expresa por parte de quien lo recibe de devolver otro tanto a quien se le entrega, con o sin el pago de intereses". *Íd.* Coincidimos con el Foro primario en que, el hecho de que el dinero prestado le genere ganancias a la parte Apelante, demuestra que el señor Rodríguez Narváez es un prestamista. De igual forma, el hecho de que haya otorgado préstamos a familiares conforme surge de la deposición, no exime a la parte Apelante de considerarse un prestamista.[29] Según expuesto, de la letra de la definición de préstamos se desprende que aun los otorgados sin intereses pueden considerarse como tales conforme al Art. 1631 del Código Civil 1930. 31 LPRA sec. 4511.

De otro lado, no obstante, la parte Apelada se obligó mediante Escritura pública ante notario a la constitución de una hipoteca en beneficio de pagaré, lo cierto es que dicho contrato es nulo por su naturaleza conforme a lo dispuesto en nuestro Código Civil. *Veamos.*

Es hartamente conocido que, en un contrato, las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y al orden público. *Íd.*; Art. 1207 del Código Civil 1930; 31 LPRA sec. 3372. Sin embargo, "[l]os contratos sin causa, o con causa ilícita, no producen efecto alguno. Es ilícita la causa cuando se

---

[29] Véase Anejo 3, Entrada 135 SUMAC.

opone a las leyes o a la moral". *Íd.*, sec. 3432. Precisa enfatizar que Nuestro Más Alto Foro ha dispuesto que "la expresión de una causa falsa en los contratos dará lugar a la nulidad, si no se probase que estaban fundados en otra verdadera y lícita". *Reyes v. Jusino Díaz*, *supra*, pág. 282. Colegimos que el contrato de la presente causa de acción no tiene causa lícita, pues, la parte Apelante actuó sin la licencia requerida para otorgar préstamos conforme a la Ley Núm. 214-1995. Reiteramos que cuando la causa del contrato simulado es ilícita, éste es inexistente y no produce efectos jurídicos. *Íd.*, pág. 283. Por todo lo anterior, coincidimos con el Foro a *quo* en que el contrato o escritura de préstamo hipotecario y pagarés que quiere hacer válido la parte Apelante es nulo por carecer de causa lícita. Asimismo, justipreciamos que la nulidad del contrato no releva a la parte Apelada del pago de lo debido. De esta forma, procede la continuación de los procedimientos para dirimir el cobro de dinero conforme a lo establecido en el Código Civil 1930. Por todo lo anterior, no se cometieron los errores señalados.

## -IV-

Por los fundamentos que anteceden, se *confirma* la Sentencia Parcial Apelada.  Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El juez Rodríguez Flores disiente sin voto escrito.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones